IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PATRICIA HAUSNER, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-25-1097 |
| UNITED STATES OF AMERICA, | * | |
| UNITED STATES DEPARTMENT OF TRANSPORTATION FEDERAL | * | |
| MARITIME ADMINISTRATION, | | |
| and TOTE SERVICES, LLC, | * | |
| *Defendants*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This admiralty and maritime dispute arises from an injury that Plaintiff Patricia Hausner ("Plaintiff" or "Ms. Hausner") sustained in April 2023 while working as a crewmember aboard vessels allegedly owned, operated, possessed, or controlled by Defendants United States of America (the "United States"), United States Department of Transportation Federal Maritime Administration ("MARAD"), and Tote Services, LLC ("Tote"), (collectively, "Defendants"). (ECF No. 1 ¶¶ 2, 3, 7.) Ms. Hausner alleges that, at the time of her injury, Defendants employed her as a utility deck and engineer seaman. (*Id.* ¶ 3.) Ms. Hausner initiated this action on April 3, 2025, by filing in this Court a four-Count Complaint against Defendants, alleging Jones Act[1] negligence (Count I); negligence or unseaworthiness under general maritime law

---

[1] The Merchant Marine Act of 1920, 46 U.S.C. § 30104 *et seq.*, commonly known as the Jones Act, extends the Federal Employers' Liability Act ("FELA") to seamen. *See O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 38–40 (1943). Although traditional maritime law did not allow seamen a right to recovery for injury, under the Jones Act, seamen may bring personal injury actions against their employers for injuries sustained in the course of their employment. *Id.* at 38–41.

1

(Count II); maintenance and cure (Count III); and that she filed an administrative claim with MARAD and Tote on March 28, 2025, (Count IV).[2] (*Id.* at 2–5.)

Presently pending before this Court is the United States' Motion to Dismiss Plaintiff's Complaint (ECF No. 14) ("United States' Motion" or "Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The United States also seeks dismissal of the claims alleged against MARAD and Tote on the basis that Ms. Hausner's sole remedy is against the United States. Plaintiff has responded in Opposition (ECF No. 21), and the United States has replied (ECF No. 22). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Ms. Hausner's claims run counter to previous rulings of this Court. For the reasons set forth below, the United States' Motion to Dismiss (ECF No. 14) is GRANTED and Plaintiff's Complaint is DISMISSED.

**BACKGROUND**

In ruling on a motion to dismiss, the Court accepts as true the factual allegations in the Plaintiff's Complaint and construes those facts in the light most favorable to the Plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).

Ms. Hausner's claims arise from an injury she sustained while working aboard two vessels allegedly owned and operated by Defendants. (ECF No. 1 ¶¶ 2–4, 7.) Ms. Hausner

---

[2] Only the first three Counts of Ms. Hausner's Complaint contain titled claims, but her fourth and final Count appears to allege that she filed an administrative claim on March 28, 2025. (ECF No. 1 ¶¶ 17–18.) Additionally, although Ms. Hausner does not specifically label her Jones Act and general maritime law claims in Counts I and II, she alleges negligence and unseaworthiness as the substance of her allegations as to those claims. *See, e.g.*, (*id.* ¶¶ 8–9, 12–13).

2

alleges that she was employed by Defendants as a utility deck and engineer seaman required to work as a member of the crew aboard the vessel DENEBOLA. (*Id.* ¶ 3.) In order to access land from DENEBOLA, however, Ms. Hausner was required to walk to a second vessel, ANTERES, which was tethered next to DENEBOLA and accessible via a gangway aboard the ANTERES. (*Id.* ¶¶ 4, 7.) Thus, Ms. Hausner had to utilize the gangway of the ANTERES to obtain access to the pier, which in turn provided access to land. (*Id.*) She alleges that, at all relevant times, DENEBOLA and ANTERES were vessels of the United States registry owned, operated, and/or in the possession and control of Defendants.[3] (*Id.* ¶ 2.)

Ms. Hausner alleges that on or about April 14, 2023, she was attempting to reach the pier area by walking cross the deck of the DENEBOLA to the ANTERES via the ANTERES' gangway between the two vessels. (*Id.* ¶ 7.) She alleges that the gangway was "bouncy and defective," "not properly rigged," "unstable," and "unsafe and unseaworthy" such that it "buckled" while she was descending. (*Id.*) As a result, her hand collided with the gangway's stanchion, which resulted in serious and permanent injury to her hand. (*Id.*) She alleges that her injury requires ongoing medical care and attention and continues to cause her significant pain and suffering, loss of enjoyment of life, permanent disability, and significant lost earnings. (*Id.* ¶ 9.)

---

[3] Courts generally construe the term "public vessel" to include vessels owned and operated by the United States, including through MARAD. *See Favorite v. Marine Personnel & Provisioning, Inc.*, 955 F.2d 382, 385, 385–86 (5th Cir. 1992) (explaining Public Vessels Act does not clearly define "public vessel" and discussing meaning of public vessel (quoting *Santos v. RCA Serv. Co.*, 603 F. Supp. 943, 946 (E.D. La. 1985))); *see generally United States v. United Cont'l Tuna Corp.*, 425 U.S. 164 (1976) (discussing merchant vessels and public vessels). In this case, Ms. Hausner alleges that both DENEBOLA and ANTERES are "owned, operated and/or" possessed and controlled by United States, MARAD, and Tote. (ECF No. 1 ¶¶ 2.) Accordingly, Plaintiff has alleged that DENEBOLA and ANTERES are public vessels and, consistent with its obligations at this pleading stage, this Court accepts such allegations as true. *See Wikimedia Found.*, 857 F.3d at 208 (citing *SD3, LLC*, 801 F.3d at 422).

3

On March 28, 2025, Ms. Hausner filed an administrative claim with MARAD and Tote. (*Id.* ¶ 18; ECF No. 14-2.) Six days later, on April 3, 2025, she initiated the instant action by filing in this Court her four-Count Complaint invoking this Court's maritime and admiralty jurisdiction. (ECF No. 1.) On May 19, 2025, the United States timely filed its Motion to Dismiss (ECF No. 14) for lack of subject matter jurisdiction. Ms. Hausner timely filed her Opposition (ECF No. 21), and the United States has replied (ECF No. 22). This matter is now ripe for review.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In a facial challenge like the one at issue in this case, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799 (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

## ANALYSIS

In its Motion to Dismiss (ECF No. 14), the United States argues that dismissal for lack of subject matter jurisdiction is appropriate as to all Defendants. (*Id.* at 1.) First, it contends

that Ms. Hausner's claims against the United States must be dismissed for lack of subject matter jurisdiction due to failure to timely exhaust administrative remedies. (ECF No. 14-1 at 4–6.) It argues that dismissal should be without leave to amend because the applicable statute of limitations has run, so any amendment now would be futile.[4] (*Id.* at 6–7.) Second, it contends that MARAD and Tote must be dismissed as defendants in this matter because, under the governing federal statutes, Ms. Hausner's exclusive remedy lies against the United States. (*Id.* at 8–9.) In Opposition, Ms. Hausner contends that the United States' arguments are premature because the applicability of the administrative exhaustion requirement depends on the fact-intensive inquiry of whether she was an "employee of the United States." *See* (ECF No. 21 at 1–7). Alternatively, she asserts that even if her claims are subject to administrative requirements, this Court should apply equitable tolling to allow such claims to proceed despite her failure to exhaust administrative remedies within the applicable limitations period. (*Id.* at 1–5, 6–7.) As explained further below, Ms. Hausner has failed to timely exhaust her administrative remedies such that her Complaint must be dismissed.

As an initial matter, the parties' dispute of jurisdiction implicitly invokes the United States' waiver of sovereign immunity in admiralty suits. "[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson*

---

[4] As explained further below, dismissal for lack of subject matter jurisdiction must be without prejudice. *See, e.g., S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing—*or any other defect in subject matter jurisdiction*—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." (emphasis added)).

*v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). As Judge Xinis of this Court has explained, "[i]t is fundamental that the United States enjoys immunity from suit unless expressly waived." *Sys. Applications & Techs., Inc. v. United States*, 491 F. Supp. 3d 73, 80 (D. Md. 2020) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Congress may waive the United States' sovereign immunity by statute. *See, e.g.*, *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 50–51 (2024) (discussing waiver of sovereign immunity under Fair Credit Reporting Act). Where Congress conditions waiver of sovereign immunity upon exhaustion of administrative remedies, however, "any failure to exhaust bars suit in this Court." *Sys. Applications & Techs., Inc.*, 491 F. Supp. 3d at 80.

Ms. Hausner's claims in this case rest at the intersection of three statutes that waive the United States' sovereign immunity to "establish the scope of this Court's power to hear . . . claims involving operations of seagoing vessels:" (1) the Public Vessels Act ("PVA"), 46 U.S.C. §§ 31101, *et seq.*; (2) the Suits in Admiralty Act ("SAA"), 46 U.S.C. §§ 30901, *et seq.*; and (3) the Clarification Act, 50 U.S.C. § 4701, *et seq. Sys. Applications & Techs., Inc.*, 491 F. Supp. 3d at 80 (first citing 41 U.S.C. § 7102(d); and then citing 46 U.S.C. §§ 30903–01, 31102–03). The SAA and PVA "permit admiralty suits to be brought against the United States for causes of action arising out of the operation of vessels owned by or operated for the United States." *Manuel v. United States*, 50 F.3d 1253, 1255 & n.1 (4th Cir. 1995). The SAA waives sovereign immunity in "case[s] in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained." 46 U.S.C. § 30903(a). The SAA contains an exclusivity provision under which:

> If a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States or the federally-owned corporation whose act or omission gave rise to the claim.

46 U.S.C. § 30904. The PVA similarly waives sovereign immunity to allow admiralty actions against the United States "for 'damages caused by a public vessel of the United States.'" *Sys. Applications & Techs., Inc.*, 491 F. Supp. 3d at 81 (quoting 46 U.S.C. § 31102). Significantly, the PVA incorporates the SAA such that "[w]here the PVA or the SAA provides a remedy against the United States, there is no recourse against the government agent whose actions engendered the lawsuit." *Servis v. Hiller Sys., Inc.*, 54 F.3d 203, 207 (4th Cir. 1995) (citing *Manuel*, 50 F.3d at 1255); *see also* 46 U.S.C. § 31103 ("A civil action under [PVA] is subject to the provisions of [the SAA] except to the extent inconsistent with the [PVA].").

The Clarification Act expands the United States' waiver of sovereign immunity under the SAA to include "suits for 'death, injuries, illness, maintenance, and cure' brought by seamen 'employed on United States [] vessels as employees of the United States . . . .'" *Kelly v. United States*, 579 F. Supp. 3d 751, 757 (D. Md. 2022) (quoting 50 U.S.C. § 4701). It "allows seamen employed on vessels owned, operated or chartered by the United States to recover for injuries as if they were employed on privately-owned American vessels." *Id.* (quoting *Morales v. United States*, 866 F. Supp. 84, 86 (E.D.N.Y. 1993) *aff'd* 38 F.3d 659 (2d Cir. 1994)). Put differently, "[t]he Act creates the legal fiction of an employment relationship between the seamen serving on federally owned vessels and the federal government in order to create tort liability under the SAA." *Id.* (quoting *Raible v. Campbell*, 911 F. Supp. 185, 187 (E.D.N.C. 1996)). Unlike the SAA, which applies to "agents" of the United States, therefore, the Clarification Act applies only where there exists "an employment relationship between the

7

seam[a]n . . . and the federal government . . . ." *Id.* (quoting *Raible*, 911 F. Supp. at 187).  This generally includes claims of seamen who entered contracts to work aboard vessels "owned, operated or chartered by the United States."[5]  *Id.*

Seamen raising claims governed by this overlapping statutory scheme must satisfy the procedural requirements of each statute.  As relevant to the instant matter, the SAA imposes a two-year statute of limitations, 46 U.S.C. § 30905, while the Clarification Act requires plaintiffs to exhaust administrative remedies before filing claims in federal court, 50 U.S.C. § 4701(a).  Before a plaintiff may file a civil action in admiralty for a claim subject to the Clarification Act, (1) she must file an administrative claim with MARAD; and (2) that claim must be "administratively disallowed," meaning that MARAD either disallows the claim in writing *or* creates a presumption of disallowance by failing to address the claim within 60 days of receiving it.  50 U.S.C. § 4701(a); 46 C.F.R. §§ 327.3, 327.6, 327.7.  Importantly, because these statutes govern the United States' waiver of sovereign immunity, their requirements "are to be construed strictly in favor of the sovereign."  *McMahon v. United States*, 342 U.S. 25, 27 (1951); *accord Servis*, 54 F.3d at 209 (citing *McMahon*, 342 U.S. at 27).  To properly file a claim subject to the Clarification Act and SAA, therefore, a plaintiff must satisfy administrative exhaustion requirements and initiate her civil suit within the SAA's two-year statute of limitations.  *Kelly*, 579 F. Supp. 3d at 758 (citing 46 U.S.C. § 30905).  That is, if a plaintiff fails to complete the administrative exhaustion requirements within the two-year limitations period,

---

[5] As discussed further below, courts have applied varying definitions of when a privately owned vessel chartered to the United States qualifies as a public vessel subject to the Clarification Act.  *See, e.g.*, *Williams v. Cent. Gulf Lines*, 874 F.2d 1058, 1060–61 (5th Cir. 1989) (surveying cases); *Calmar S.S. Corp. v. United States*, 345 U.S. 446 (1953) (holding privately owned vessel chartered to the United States was not a "public vessel" because it was privately owned and operated).

her civil action must be dismissed for lack of jurisdiction because the United States only waived sovereign immunity for timely exhausted claims. *See Hebert v. United States*, 53 F.3d 720, 722 (5th Cir. 1995) (dismissing civil action filed "less than 60 days before the expiration of the statute of limitations for [the] legal claim" and before administrative claim had been administratively disallowed); *accord Morales v. United States*, 38 F.3d 659, 660 (2d Cir. 1994).

### I.     Applicability of Administrative Exhaustion Requirement

Under this coordinated statutory scheme, this Court's jurisdiction of Ms. Hausner's claims depends on the threshold inquiry of whether she was an "employed on [a] United States . . . vessel[] as [an] employee[] of the United States" such that her claims are subject to the Clarification Act. 50 U.S.C. § 4701(a). In its Motion to Dismiss, the United States contends that the Clarification Act governs, and Ms. Hausner failed to timely exhaust her administrative remedies because she filed this action before her claim to MARAD was administratively disallowed. (ECF No. 14-1 at 5–6.) The United States asserts that her claims must be dismissed for lack of jurisdiction, and dismissal should be without leave to amend because the limitations period has now expired. (*Id.* at 6–7.) Specifically, it argues that jurisdiction did not exist at the time Ms. Hausner filed her Complaint and the subsequent termination of the limitations period renders futile any amendment. (ECF No. 22 at 1; ECF No. 14-1 at 6–7.) Finally, it contends that under the exclusivity provisions of the PVA and SAA, Ms. Hausner's sole remedy lies with the United States such that her claims against MARAD and Tote must be dismissed. (ECF No. 14-1 at 7–8.) In Opposition, Ms. Hausner argues that dismissal on these bases is premature because she is entitled to discovery to determine whether she is an "agent" of the United States subject only to the SAA and PVA

or an "employee" of the United States subject to the Clarification Act and its administrative exhaustion requirements. (ECF No. 21 at 1–5.) Alternatively, she contends that even if she is an "employee" subject to the Clarification Act, the Court should apply equitable tolling to allow her claims to proceed. (*Id.* at 6–7.) As explained further below, Ms. Hausner's claims are subject to the Clarification Act, and equitable tolling is not applicable in this case.

Few courts have directly addressed whether the Clarification Act governs a seaman's claims for injuries sustained aboard a public vessel owned by the United States but operated by a private company under contract with MARAD. Notably, many of the applicable cases relate to private employers' liability for injuries sustained by seamen aboard vessels operated by MARAD's predecessor agency, the War Shipping Administration, during World War II. *See, e.g.*, *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 791, 794–95 (1949) (explaining that only one "person, firm, or corporation"—"[e]ither [the private employer] or the Government"—"can be sued as employer" under the Jones Act and, after the Clarification Act, the appropriate employer depends on the contracts and relationship between the parties); *Fink v. Shepard S.S. Co.*, 337 U.S. 810 (1949) (determining Clarification Act prevented liability of general agent as private employer). More recently, this Court and others have held that the Clarification Act governs claims by a seaman employed aboard a public vessel by a private employer that has contracted with MARAD. *See, e.g.*, *Kelly v. United States*, 579 F. Supp. 3d 751, 757 (D. Md. 2022) (holding Clarification Act governed seaman's claims because he was "employed on a public vessel, and his claims [we]re for injuries and maintenance and cure"); *Martin v. Miller*, 65 F.3d 434, 443, 440 n.3 (5th Cir. 1995) (explaining that contract with private employer did not preclude application of Clarification Act to seaman's claims because "[t]he

form of the employer-employee relationship is not dispositive . . . of the question whether she is a seaman within the terms of the Clarification Act"); *Madry v. Interocean Am. Shipping Corp.*, 2009 WL 1765652, at *2 (N.D. Cal. June 19, 2009) (holding Clarification Act applied to claims where private-employer defendant "submitted uncontroverted evidence that the [vessel at issue] is owned by MARAD and is a public vessel of the United States"); *Davis v. United States*, 2005 WL 8173915, at *1 (E.D. La. Oct. 11, 2005) ("As a seaman aboard a vessel owned by and operated for the Marine Administration [MARAD], the Plaintiff is an employee of the United States." (citing *Cosmopolitan Shipping Co.,* 337 U.S. at 800)).

Plaintiff acknowledges that this Court has previously applied the Clarification Act to claims brought by a seaman employed aboard a public vessel by a private employer who contracted with MARAD, but she urges this Court to conduct its own statutory analysis to reach a contrary conclusion.[6] *See* (ECF No. 21 at 4–5). Ms. Hausner fails, however, to identify any cases in which courts have declined to apply the Clarification Act on the basis that the determination of whether the plaintiff was an "employee" of the United States required additional discovery. Indeed, as explained above, federal district and appellate courts consistently apply the Clarification Act to claims by seamen employed under nearly identical circumstances. *See, e.g.*, *Stewart v. United States*, 903 F. Supp. 1540, 1541, 1545 (S.D. Ga. 1995) (dismissing claim against private employer but suggesting claim against United States could proceed based on Clarification Act); *Morales v. United States*, 866 F. Supp. 84, 85–86 (E.D.N.Y.

---

[6] In *Kelly v. United States*, 579 F. Supp. 3d 751 (D. Md. 2022), this Court considered the Clarification Act's application in remarkably similar circumstances. Specifically, it determined that claims by a seaman employed by Tote "on a MARAD vessel" were subject to the Clarification Act. *Id.* at 754, 758 & n.10. This Court notes, however, that the court in *Kelly* appeared to have access to the contracts governing the relationship between the plaintiff, Tote, MARAD, and the United States. *See id.* at 758 n.10.

11

1993) *aff'd* 38 F.3d 659 (2d Cir. 1994) (applying Clarification Act to claim by plaintiff "injured . . . while employed as a seaman aboard . . . a vessel owned by the United States through [MARAD] and operated pursuant to a contract by its general agent, American President Lines, Ltd."); *O'Connell v. Interocean Mgmt. Corp.*, 90 F.3d 82, 85 (3d Cir. 1996) ("[Plaintiff's] claims, which are based on an injury sustained while employed as a crew member of a vessel owned by the United States (through MARAD), are governed by the Clarification Act, which incorporates the Suits in Admiralty Act[.]" (internal citations omitted)). These decisions reflect that "[t]he form of the employer-employee relationship is not dispositive . . . of the question of whether [the plaintiff] is a seaman within the terms of the Clarification Act." *Martin*, 65 F.3d at 440 n.3 (citing *Doyle v. Bethlehem Steel Corp.*, 504 F.2d 911, 913–14 (5th Cir. 1974)); *Kelly*, 579 F. Supp. 3d at 757 (determining the Clarification Act applies to seamen directly employed by private employer on public vessel operated for MARAD because "[t]he Act creates the legal fiction of an employment relationship" (quoting *Raible*, 911 F. Supp. at 187).

In this case, Plaintiff has alleged that the "United States of America, [MARAD], and Tote Services, Inc., owned, operated and/or had in their possession and control the vessels DENEBOLA and ANTERES, vessels of the United States registry." (ECF No. 1 ¶ 2.) Additionally, the administrative claim that she filed with MARAD identifies Defendant Tote as the ship manager/general agent of DENEBOLA and ANTERES, and states that she is employed aboard "DENEBOLA – U.S. DEPARTMENT OF TRANSPORTATION

MARITIME ADMINISTRATION." (ECF No. 14-2 at 2.)[7] Although early applications of the Clarification Act contemplated evaluation of the specific contracts governing a plaintiff's relationship with a general agent and the general agent's relationship with the United States, *see, e.g.*, *Cosmopolitan Shipping Co.*, 337 U.S. at 799–800, courts subsequently applying these precedents have consistently applied the Clarification Act to claims by seamen contracted by private employers serving as general agents for MARAD with little or no reference to the contracts governing the parties' employment or agency relationships, *see, e.g.*, *Kelly*, 579 F. Supp. 3d at 757–58; *Martin*, 65 F.3d at 440 n.3; *Madry*, 2009 WL 1765652, at *2; *Kasprik v. United States*, 87 F.3d 462, 464–65 (11th Cir. 1996); *O'Connell*, 90 F.3d at 85; *Morales*, 866 F. Supp. at 87.[8] Accordingly, Ms. Hausner's claims for injuries sustained aboard a vessel owned by the United States, through MARAD, but operated by a private general agent are governed by the Clarification Act. *See Kasprik*, 87 F.3d at 464–65 ("[S]eam[e]n's claims arising from

---

[7] As Judge Hurson of this Court recently explained, in a facial challenge to jurisdiction like that at issue here, "the Court looks only at the complaint and assumes the facts therein to be true." *McMillan v. Kansas City Life Ins. Co.*, 762 F. Supp. 3d 443, 454 (D. Md. 2025) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Even where a court is limited to consideration of the pleadings, however, it may consider an authentic document attached to a motion to dismiss and incorporated by reference in the plaintiff's complaint *or* integral to the complaint. *See Gaines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164, 166 (4th Cir. 2016). In this case, Ms. Hausner referenced her administrative MARAD claim in her Complaint without attaching the claim itself, (ECF No. 1 ¶ 18), and the United States attached to its Motion to Dismiss a copy of her administrative claim (ECF No. 14-2). The administrative claim is thus appropriate for this Court's consideration as referenced in and integral to Ms. Hausner's Complaint because it provides a jurisdictional prerequisite to her claims.

[8] Many of these cases either do not reference the relevant contracts at all, *see, e.g.*, *Madry*, 2009 WL 1765652, or relegate any reference to such contracts to a brief footnote, *see, e.g.*, *Kelly*, 579 F. Supp. 3d at 758 n.10; *Martin*, 65 F.3d at 440 n.3. Nor is this Court persuaded by Ms. Hausner's argument that additional discovery is required to determine the "degree of operational control exercised by the United States." *Kelly*, 579 F. Supp. 3d at 756; *see* (ECF No. 21 at 2 (first citing *Servis v. Hiller Sys., Inc.*, 54 F.3d 203, 207–09 (4th Cir. 1995); and then citing *Kelly*, 579 F. Supp. 3d at 756).) The cases that Ms. Hausner cites for this proposition discuss operational control only as a factor relevant to determining whether the SAA's exclusivity provision applies to the claims, not whether the Clarification Act governs such claims. *See Kelly*, F. Supp. 3d at 756 (discussing exclusivity provisions of PVA and SAA); *Servis*, 54 F.3d at 207–09 (discussing claims under SAA without reference to Clarification Act).

employment aboard vessels owned by the United States are governed by the Clarification Act, and enforced pursuant to the terms of the [SAA].").

### II. Plaintiff did not exhaust her administrative remedies under the Clarification Act prior to filing this action

As explained above, under the Clarification Act, this Court only has jurisdiction of Ms. Hausner's claims if she has filed an administrative claim with MARAD and that claim has been "administratively disallowed" either by formal writing from MARAD or by its failure to address the claim within sixty days of filing. *See* 50 U.S.C. § 4701(a); 46 C.F.R. §§ 327.3, 327.6, 327.7; *see also Hebert v. United States*, 53 F.3d 720, 722 (5th Cir. 1995) (explaining "substantial compliance [with the Clarification Act's administrative requirements] is not enough"). Additionally, under the Suits in Admiralty Act ("SAA"), a plaintiff must file her claim within the two years of her injury. 46 U.S.C. § 30905. Taken together, therefore, these statutes require that a plaintiff *both* exhaust administrative remedies *and* file her properly exhausted claim within two years of the injury. Where a plaintiff does not timely exhaust administrative remedies, the United States retains sovereign immunity and this Court lacks jurisdiction of the unexhausted claims. *Kelly v. United States*, 579 F. Supp. 3d 751, 758 (D. Md. 2022); *see also Smith v. United States*, 873 F.2d 218, 221 (9th Cir. 1989) ("[T]he Clarification Act unmistakably prohibits [plaintiffs] from filing a claim in federal court before obtaining an administrative disallowance."). In this case, Ms. Hausner failed to timely exhaust her administrative remedies and, therefore, this Court lacks jurisdiction over her claims.

As explained above, an administrative claim is "administratively disallowed"—and thus exhausted—under the Clarification Act in either of two paths: (1) MARAD gives notice "in writing" of administrative disallowance, 46 C.F.R. § 327.6, or (2) MARAD "fails to give written

14

notice of allowance or disallowance of a claim . . . within sixty (60) calendar days following the date of the receipt of such claim by the proper person designated . . . ," 46 C.F.R. § 327.7. In this case, only the first avenue to exhaustion is possible because Ms. Hausner filed the instant action on April 3, 2025, just six days after she filed her administrative claim with MARAD on March 28, 2025. *See* (ECF No. 1; *id.* ¶ 18; ECF No. 14-2). Her claim is not exhausted under the first path, however, because she does not allege that MARAD provided notice in writing that her claim had been administratively disallowed before she filed the instant lawsuit. Moreover, because Ms. Hausner's injury occurred on April 14, 2023, (ECF No. 1 ¶ 7; ECF No. 14-2 at 1, 2), she had to both file this action *and* satisfy the Clarification Act's administrative requirements on or before April 14, 2025. *See Kelly*, 579 F. Supp. 3d at 758; 46 U.S.C. § 30905 (imposing two-year limitations period); 50 U.S.C. § 4701 (imposing administrative exhaustion requirement). Although Ms. Hausner filed this action within two years of her injury, she did so without the administrative exhaustion prerequisite to this Court's jurisdiction of her claims. *Kelly*, 579 F. Supp. 3d at 758.

Notwithstanding her failure to exhaust administrative remedies, Ms. Hausner argues in the alternative that her claims should be subject to equitable tolling because more than sixty days have now passed since she filed her claim with MARAD, and she filed her lawsuit within the limitations period imposed under SAA.[9] (ECF No. 21 at 5–7.) The party seeking equitable

---

[9] Where a statute of limitations is jurisdictional, it cannot be subjected to equitable tolling. *See United States v. Wong*, 575 U.S. 402, 408–09 (2015). There appears to exist a circuit split regarding whether the limitations period under SAA is jurisdictional and, therefore, not subject to equitable tolling. *Compare Hedges v. United States*, 404 F.3d 744 (3d Cir. 2005) (holding SAA limitations period is not jurisdictional and could be equitably tolled); *Wilson v. United States Gov't*, 23 F.3d 559 (1st Cir. 1994) (suggesting SAA limitations period could be equitably tolled); *Raziano v. United States*, 999 F.2d 1539 (11th Cir. 1993) (suggesting SAA limitations period could be equitably tolled); *Favorite v. Marine Pers. & Provisioning, Inc.*, 955 F.2d 382 (5th Cir. 1992) (same) *with Smith v. United States*, 873 F.2d 218 (9th Cir. 1989) (holding SAA limitations period is jurisdictional); *States Marine Corp.*

tolling bears the burden to prove her entitlement to such tolling. *Warfaa v. Ali*, 1 F.4th 289, 294 (4th Cir. 2021). Specifically, she must establish "(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way and prevented timely filing." *Id.* (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016)); *see also Irwin v. Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."). The Supreme Court has explained that "the diligence prong . . . covers those affairs within the litigant's control; the extraordinary-circumstances prong, by contrast, is meant to cover matters outside [her] control." *Menominee Indian Tribe*, 577 U.S. at 257. Thus, "the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Id.*

In the context of the SAA, this Court has construed extraordinary circumstances to require "instances of serious and affirmative government misconduct . . . ." *Ammer v. United States*, 881 F. Supp. 1007, 1012 (D. Md. 1994) *aff'd* 1995 WL 318771 (4th Cir. May 26, 1995);

---

*of Del. v. United States*, 283 F.2d 776, 778–79 (2d Cir. 1960) (holding expiration of SAA limitations period extinguishes claim because SAA waives sovereign immunity). The U.S. Court of Appeals for the Fourth Circuit has not yet squarely addressed whether the SAA limitations period is jurisdictional, but it has suggested that insanity is not sufficient to toll the limitations period. *See Williams v. United States*, 228 F.2d 129, 132 (4th Cir. 1955). *But see Owens v. United States*, 91 F.3d 132, 1996 WL 386607, at *1 (4th Cir. July 1, 1996) (unpublished) ("The two year limitations period under the Suits in Admiralty Act, which also applies to suits under the Public Vessels Act through 46 U.S.C. § 78, is jurisdictional." (citing *Williams v. United States*, 228 F.2d 129 (4th Cir. 1955))). Nevertheless, this Court has previously assumed that equitable tolling may apply to the SAA limitations period, *see Ammer v. United States*, 881 F. Supp. 1007 (D. Md. 1994) *aff'd* 1995 WL 318771 (4th Cir. May 26, 1995), and most federal courts of appeal have determined that the limitations period is non-jurisdictional. *See Hedges*, 404 F.3d at 748 (collecting cases). In this case, this Court need not determine this issue because, even assuming that equitable tolling could apply, Ms. Hausner has not shown that such tolling is appropriate.

16

*see also Farhat v. United States*, 2022 WL 2840483, at *6 (10th Cir. July 21, 2022) (suggesting that even the government's decision to intentionally mislead a plaintiff regarding the SAA's limitations period would be insufficient to obtain equitable tolling if plaintiff were not diligent). Moreover, federal appellate courts have repeatedly rejected the assertion that the government's knowledge of a claim due to the existence of pre-suit administrative proceedings or settlement negotiations justifies equitable tolling. *See, e.g.*, *Williams v. United States*, 711 F.2d 893, 898–99 (9th Cir. 1983) (holding that plaintiff's filing of administrative claim did not equitably toll SAA limitations period); *Raziano v. United States*, 999 F.2d 1539, 1541 (11th Cir. 1993) (holding government's knowledge of claim due to pre-suit settlement negotiations did not equitably toll SAA limitations period); *Hedges v. United States*, 404 F.3d 744, 751–52 (3d Cir. 2005) (declining to "deviate from . . . precedents" that filing of administrative claim under FTCA does not toll SAA limitations period); *cf. McMahon v. United States*, 342 U.S. 25, 27–28 (1951) (holding that the SAA's limitations period begins from the date of the injury and not from the date of disallowance of the administrative claim).

In this case, Ms. Hausner simply has not demonstrated that she diligently pursued her claim but was unable to timely file this action due to circumstances beyond her control. Indeed, she does not identify any government misconduct that prevented her from filing her administrative claim with MARAD with sufficient time to allow, at minimum, for the sixty-day waiting period required to obtain the presumption of administrative disallowance under the Clarification Act. Rather, she contends that equitable tolling will not prejudice Defendants because her MARAD claim provided timely notice of her claim, and initial filing of her administrative claim was delayed by her ongoing medical treatment. (ECF No. 21 at 6–7.)

Specifically, she asserts that the regulations governing MARAD claims require her to "include a 'sum certain dollar amount' which is specifically itemized for various categories of damages including both her past and future medical expenses, as well as a copy of all of her medical records." (ECF No. 21 at 6–7 (quoting 46 C.F.R. § 327.4(b)(3), (4)).) As discussed above, the government's awareness of a claim prior to suit is insufficient to justify equitable tolling, and Ms. Hausner's assertions regarding her medical treatment are insufficient to demonstrate the extraordinary circumstances required for such tolling. *See Williams*, 711 F.2d at 898–99 (filing of administrative claim is insufficient for equitable tolling); *Ammer*, 881 F. Supp. at 1012 (equitable tolling is inappropriate absent affirmative government misconduct).

Finally, Ms. Hausner has not demonstrated that she diligently pursued her claims. "[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96. "Where, as here, the plaintiff had ample time and opportunity to bring suit within the statutory period, enlarging the limitations period would defeat the SAA's legislative purpose." *Rashidi v. Am. President Lines*, 96 F.3d 124, 127 (5th Cir. 1996). Diligent pursuit of claims typically includes filing administrative claims with sufficient time to allow a plaintiff to satisfy exhaustion requirements before the termination of the limitations period. Accordingly, Ms. Hausner has not met her burden to establish that equitable tolling is justified in this case, and her claims are now time-barred.

### III. Plaintiff's exclusive remedy lies with the United States

Finally, because Ms. Hausner's claims are subject to the Suits in Admiralty Act ("SAA"), her exclusive remedy lies with the United States. As discussed above, the SAA mandates that "where a remedy is provided by [the SAA] it shall hereafter be exclusive of any other action

by reason of the same subject matter against the agent or employee of the United States . . . whose act or omission gave rise to the claim." *Manuel v. United States*, 50 F.3d 1253, 1255 (4th Cir. 1995) (quoting 46 U.S.C. § 745). "This exclusivity provision precludes recovery against an agent of the United States operating a government-owned vessel on any claim for which the SAA or the PVA provides a remedy against the United States." *Id.*; *accord Servis v. Hiller Sys., Inc.*, 54 F.3d 203, 207, 209 (4th Cir. 1995). For the reasons discussed above, Ms. Hausner's claims in this case are subject to the SAA, PVA, and Clarification Act. Accordingly, her exclusive remedy lies with the United States, and her claims against MARAD and Tote must be dismissed.

## CONCLUSION

For the foregoing reasons, the United States' Motion to Dismiss (ECF No. 14) is GRANTED. Dismissals for lack of subject matter jurisdiction are necessarily without prejudice. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). Nevertheless, the Court notes that Ms. Hausner's claim is now barred by the SAA's two-year statute of limitations such that any amendment would be futile.

A separate Order follows.

Date: December 1st, 2025 /s/
Richard D. Bennett
United States Senior District Judge